**In re Mae Johnson JACKSON.**

**No. 10-00-110-CV.**

Court of Appeals of Texas, Waco.

April 4, 2000.

Karen C. Matkin & Matkin, L.L.P., Waco, for Relator.

Art Pertile, III, City Atty., for City of Waco.

Kevin McGraw, Asst. City Atty., Waco, for Respondent.

Before Chief Justice DAVIS, Justice VANCE, Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Mae Johnson Jackson asks this Court to issue a writ of mandamus against Respondent Patricia W. Ervin, City Secretary for the City of Waco. Jackson requests that we order Ervin to submit Jackson's name as a duly certified candidate for the District One position on the Waco City Council.

### BACKGROUND

The Charter for the City of Waco establishes the qualifications for a member of the City Council as follows:

At the time of his election to office, each member of the Council shall be at least twenty-one (21) years of age, shall be a citizen and qualified voter of the

State of Texas and the City of Waco for the twelve (12) months immediately preceding the date of election, shall be a taxpayer in the City, and, if elected from a District, a resident of the District from which he is elected for the six (6) months immediately preceding the day of election.

WACO, TEX., CHARTER, art. II, § 3 (1958) (amended 1987).

In 1998, Jackson resided in Chalk Bluff, an unincorporated area located in McLennan County Election Precinct 84 but outside of the City of Waco (the "City"). She sold her Chalk Bluff residence by warranty deed dated November 30, 1998. She submitted a bid to the City on April 6, 1999 for the purchase of three lots recovered in a tax foreclosure proceeding by the City, the County, and the Waco Independent School District. These three entities conveyed the lots to Jackson in a Tax Resale Deed executed in June 1999. According to Jackson, she "immediately took possession of the lots and began having them cleaned and planned for the initial site work that needed to be done" for the construction of a new residence on the property. Jackson cast her ballot for the November 1999 constitutional amendment election in Precinct 84. She did not apply for a voter registration certificate within the City until January 2000.

On March 14, 2000, Jackson filed an application with Ervin for a place on the ballot, indicating that she had resided in the City of Waco for sixteen months, and in District One for four months. On March 20, Ervin sent Jackson a letter declaring her ineligible because: (1) the application on its face demonstrated that she would not have been a resident of District One for the required six months preceding the election; and (2) Jackson's casting of the ballot in Precinct 84 on November 2, 1999 established that she would not have been a resident of the City for the required twelve months preceding the election.

Jackson submitted a second application on March 21. In this application, Jackson declared herself to have been a resident of the City and of District One for "*1* yr(s) *4.6774* mos." The next day, Ervin sent Jackson a letter declaring her ineligible because of a failure to meet the residency requirements for the position. Ervin told Jackson in this letter:

> You stated on your second application that you have resided within the City of Waco for one (1) year and 4.6774 months. However, a copy of your voting history, certified by the McLennan County Elections Administrator, shows that you voted in the November 2, 1999 election in Precinct 84, which is located outside the City of Waco. No other public records have been provided or made available to me that would contradict the presumption from the records reviewed that you were legally entitled to vote in Precinct 84 as a legal resident of that voting precinct. Because the public record shows that you were a legal resident of precinct 84, which is outside the City of Waco, on November 2, 1999 the earliest you could have resided in the City of Waco would be November 3, 1999. If you resided in the City of Waco on November 3, 1999, you would reside in Waco for twelve (12) months either on November 3, 2000 or October 27, 2000, both dates occur after the date of the election.

Jackson filed her mandamus petition with this Court on March 27. Ervin and Lawrence Johnson, the District One incumbent, have filed responses. The Elections Administrator for McLennan County will conduct the elections for the City of Waco on May 6. According to the affidavit of the Elections Administrator, she will request printing of the ballots "[o]n or about April 6, 2000." Printing of the ballots and programming the voting machines to read the ballots requires "approximately a week." Early voting is scheduled to begin on April 19.

## APPLICABLE LAW

■ Section 273.061 of the Election Code gives this Court jurisdiction to entertain Jackson's petition and issue the requested writ if warranted. *See* TEX. ELEC. CODE ANN. § 273.061 (Vernon 1986); *In re Bailey,* 975 S.W.2d 430, 432 (Tex.App.—Waco 1998, orig. proceeding). This statute authorizes the issuance of a writ of mandamus "to compel the performance of any duty imposed by law in connection with the holding of an election." *In re Gibson,* 960 S.W.2d 418, 419 (Tex.App.—Waco 1998, orig. proceeding); TEX. ELEC.CODE ANN. § 273.061; *see also In re Jones,* 978 S.W.2d 648, 651 (Tex.App.—Amarillo 1998, orig. proceeding); *Bailey,* 975 S.W.2d at 432 ("the Legislature has broadly extended our mandamus jurisdiction to resolve election questions which, as here, are usually time-sensitive").

■ We may not resolve factual disputes in a mandamus proceeding. *Jones,* 978 S.W.2d at 652; *Escobar v. Sutherland,* 917 S.W.2d 399, 403 (Tex.App.—El Paso 1996, orig. proceeding). We must strictly construe any pertinent legal provision which restricts the right to hold office in favor of eligibility. *Wentworth v. Meyer,* 839 S.W.2d 766, 767 (Tex.1992) (orig.proceeding); *see also Jones,* 978 S.W.2d at 653.

As City Secretary, Ervin bears the responsibility of having the official ballot for a city election prepared. TEX. ELEC.CODE ANN. § 52.002(3) (Vernon Supp.2000). Ervin may issue an administrative declaration of ineligibility of a candidate for city office, but only if:

- the information on the candidate's application for a place on the ballot indicates that the candidate is ineligible, or

- facts indicating that the candidate is ineligible are conclusively established by another public record.

TEX. ELEC.CODE ANN. § 145.003(f) (Vernon Supp.2000). According to Section 145.003(g), when an election authority such as Ervin is:

presented with ... [a] public record containing information pertinent to a candidate's eligibility, the appropriate authority shall promptly review the record. If the authority determines that the record establishes ineligibility as provided by Subsection (f), the authority shall declare the·candidate ineligible.

*Id.* § 145.003(g) (Vernon Supp.2000).

## ANALYSIS

Jackson presents two issues in her mandamus petition:

(1) Whether Ervin exceeded her authority under Section 145.003 when she declared Jackson ineligible to be placed on the ballot based on a non-conclusive "presumption" of non-residency; and

(2) Whether the single act of voting in a statewide election on constitutional amendments, standing alone, conclusively establishes a candidate's residency.

Ervin responds that she did not exceed her authority and that Jackson's casting of a ballot in Precinct 84 conclusively establishes that she is ineligible for the office she seeks. Johnson asserts that because Jackson "herself has created a factual dispute about her eligibility, she is not entitled to relief by mandamus." He also contends that, because Jackson did not declare to voting officials that she was no longer a resident of Precinct 84 when she cast her ballot in the November 1999 election, "[s]he should be held to have conclusively established her residence in Precinct 84 as late as November of 1999."[1]

1. Johnson walks a fine line here. In his first response, he essentially concedes that Jackson's multiple ballot applications and her voting record do not conclusively establish her residence. Response & Brief of Lawrence Johnson at 12. In his second response, he states, "[A]bsent some declaration by Jackson, of another residence, her voting records *should* be held to be conclusive." *Id.* at 18 (emphasis added).

### JACKSON'S VOTING RECORD

■ The City charter requires that a council member be "a citizen and qualified voter" of the City "for the twelve (12) months immediately preceding the date of election."[2] *See* WACO, TEX., CHARTER, art. II, § 3. The parties agree that this constitutes a requirement that a council member have been a resident of the City for the required period. Ervin relied on the fact that Jackson voted in Precinct 84 during the period in which the City Charter requires that she be a resident of the City to "presume" that Jackson was "a legal resident of precinct 84, which is outside the City of Waco, on November 2, 1999." Ervin contends that *McClelland v. Sharp* controls here. 430 S.W.2d 518 (Tex.Civ. App.—Houston [14th Dist.] 1968, orig. proceeding) (per curiam). We disagree.

In *McClelland,* the relator ran as "a candidate for State Representative in the 22nd Legislative District, Position No. 7, in Harris County, Texas, in a special election held on November 11, 1967." *Id.* at 519. In November 1968, he sought to run for the 24th District seat. *Id.* However, his candidacy for the 22nd District seat on November 11, 1967, conclusively established his residence in that district on that date. *Id.* at 520, 522.

The Fourteenth Court of Appeals also referred to the fact that McClelland voted in the 22nd District during the time period he alleged himself to be a resident of the 24th District. *Id.* at 519. In 1967 and 1968 when McClelland cast these ballots however, a voter who had moved to a

different precinct within the same county could not vote in his former precinct after moving. *See* Act of Feb. 22, 1966, 59th Leg., 1st C.S., ch. 1, § 2, 1966 Tex. Gen. Laws 1, 7–8 (amended 1969) (current version at TEX. ELEC.CODE ANN. § 11.004 (Vernon Supp.2000)). In 1971, the Legislature amended the statute so that a voter in this situation could continue to vote in the former precinct during the first 30 days after moving. *See* Act of May 31, 1971, 62d Leg., R.S., ch. 827, § 10, 1971 Tex. Gen. Laws 2509, 2516 (amended 1975) (current version at TEX. ELEC.CODE ANN. § 11.004). The present statute does not place a specific restriction on the length of time in which a voter who has moved to another election precinct in the same county may cast a ballot in his former precinct. *See* TEX. ELEC.CODE ANN. § 11.004.[3] Because of these significant differences in the applicable voting laws, we believe the critical distinction between *McClelland* and this case is the fact that he held himself out as a candidate for the 22nd District during the time period he was required to be a resident of the 24th to run in the November 1968 election.

Instead, the facts of this case are more similar to those presented in *Culberson v. Palm,* 451 S.W.2d 927 (Tex.Civ.App.— Houston [14th Dist.] 1970, orig. proceeding) (per curiam). In that case, Culberson sought a mandamus directing party officials to place his name on the Republican primary ballot as a candidate for precinct chairman. According to the record, Culberson had sold his home in another pre-

---

2. The record clearly demonstrates that Jackson did not register to vote in the City until January 2000. Section 11.002 of the Election Code requires that a person be "a registered voter" to be considered a "qualified voter" for purposes of that Code. TEX. ELEC.CODE ANN. § 11.002(6) (Vernon Supp.2000). Thus, the argument could be made that Jackson is not eligible because she was not a "qualified voter" for the required period of time. However, article VI, section 2 of the Texas Constitution expressly provides that a requirement of registration "shall not be considered as a qualification of a voter within the meaning of

the term 'qualified voter' ... in respect to any matter except qualification and eligibility to vote." TEX. CONST. art. VI, § 2. The parties do not contend that Jackson is ineligible because she did not register to vote in the City in a timely fashion, and we do not believe the Constitution would allow such a contention.

3. Nevertheless, chapter 15 of the Election Code details the procedures to be followed by the registrar whenever an issue concerning the residency of a voter is raised. *See* TEX. ELEC.CODE ANN. §§ 15.001–15.144 (Vernon 1986 & Vernon Supp.2000).

cinct in December 1969 with an agreement that his family and he could continue to occupy the home. In late January 1970, Culberson and his family began moving smaller items into their new home. On February 3, professional movers completed the job. The ballot deadline was on February 2, and Culberson applied for a place on the ballot on that date. *Id.* at 927–28.

On February 2, Culberson's official voter registration remained in the former precinct. Pursuant to his request, the registrar issued a certificate of transfer of his registration to the new precinct on February 20. Party officials in Harris County determined that Culberson's voter registration conclusively established that he was not a resident of the new precinct when he applied for a position on the ballot. *Id.* at 928. The Fourteenth Court disagreed, observing that the "fact that he had earlier registered as a voter in precinct 15 does not establish that he was not a resident of precinct 222 on February 2." *Id.* at 929.

We hold that the voting record upon which Ervin relied is not a public record which *conclusively establishes* Jackson's ineligibility for the office sought. *See id.; see also Garcia v. Carpenter,* 525 S.W.2d 160, 161 (Tex.1975) (orig.proceeding); *Witherspoon v. Pouland,* 784 S.W.2d 951, 954 (Tex.App.—Dallas 1990, orig. proceeding); Tex. Elec.Code Ann. § 145.003(f)(2).

### DISPUTED FACTUAL ISSUES

■ Johnson also contends in his first response that, because Jackson "herself has created a factual dispute about her eligibility, she is not entitled to relief by mandamus." The parties agree that this Court may not resolve factual disputes in a mandamus proceeding. *See Jones,* 978 S.W.2d at 652; *Escobar,* 917 S.W.2d at 403. Johnson suggests that, because Jackson made two sworn applications which conflict on the issue of how long she has been a resident of District One, this Court would have to resolve this disputed fact issue before we could grant the requested relief. We disagree. The only ultimate issue before this Court is the propriety of Ervin's administrative declaration that Jackson is ineligible, made in response to Jackson's second application.[4]

Jackson sold her Chalk Bluff home in November 1998. Other documents she has tendered to this Court relating to her purchase of the three lots from the City, the County, and WISD show an address in China Spring. She states in an affidavit filed with her petition that she "temporarily moved" to an address on Dan Rowe on November 1, 1999. Her March 21 ballot application states that the Dan Rowe address is her "permanent residence." When these facts are considered together with Jackson's casting of a ballot outside the City only six months before the coming city election, an issue of fact on the question of her residency may well be raised.

■ Nevertheless, Ervin has no fact-finding authority. *See Garcia,* 525 S.W.2d at 161; *Baker v. Porter,* 160 Tex. 488, 489, 333 S.W.2d 594, 595 (1960) (orig.proceeding); *Culberson,* 451 S.W.2d at 929. Nor do we. *See Jones,* 978 S.W.2d at 652; *Escobar,* 917 S.W.2d at 403; *Culberson,* 451 S.W.2d at 929. Such disputes must be resolved in accordance with Section 273.081 of the Election Code. *See Escobar,* 917 S.W.2d at 410; Tex. Elec.Code Ann. § 145.003(a) (Vernon Supp.2000), § 273.081 (Vernon 1986); *see also Baker,* 160 Tex. at 489, 333 S.W.2d at 595.

■ Ervin may rely on a public record to administratively declare that a candi-

---

4. Were we to accept Johnson's position, any candidate who made a good faith error in an initial ballot application would be precluded from correcting that error in a subsequent application. This would be contrary to the directive that we must strictly construe any pertinent legal provision which restricts the right to hold office in favor of eligibility. *Wentworth v. Meyer,* 839 S.W.2d 766, 767 (Tex.1992) (orig.proceeding); *see also In re Jones,* 978 S.W.2d 648, 653 (Tex.App.—Amarillo 1998, orig. proceeding).

date is ineligible only when the record *conclusively establishes* the candidate's ineligibility. *See Garcia,* 525 S.W.2d at 161; *Witherspoon,* 784 S.W.2d at 954; TEX. ELEC.CODE ANN. § 145.003(f)(2). Ervin concluded that Jackson's casting of a ballot in Precinct 84 created a "presumption" that Jackson voted there because she was "a legal resident of that voting precinct." Because current voting laws permit a voter to cast a ballot in her former precinct, the casting of a ballot in this manner does not "conclusively establish" residency. Therefore, we conclude that Ervin exceeded her authority when she administratively declared Jackson to be ineligible for the City Council on the basis of Jackson's voting record.

### CONCLUSION

The fact that Jackson cast a ballot in a precinct outside the City of Waco does not conclusively establish that she is ineligible for the office she seeks. Accordingly, Ervin exceeded her ministerial authority by making an administrative declaration that Jackson was ineligible to be a candidate. Therefore, we conditionally grant the requested writ. The writ will issue *instanter* if Ervin fails to provide written confirmation to this Court no later than 5:00 p.m. on April 5, 2000 that she has withdrawn her administrative declaration of ineligibility. *See Sears v. Bayoud,* 786 S.W.2d 248, 254 (Tex.1990) (orig.proceeding). Because of the proximity of the early voting period, we will entertain no motion for rehearing in this cause. *Id.; Gibson,* 960 S.W.2d at 422.